Debra WALKER, et al., Plaintiffs,

v.

**U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, et al., Defendants,**

No. Civ.A. 3:85–CV–1210–.

United States District Court, N.D. Texas, Dallas Division.

March 18, 2004.

Michael M. Daniel, Laura Beth Beshara, Law Office of Michael M Daniel, Dallas, TX, for Debra Walker, Jeanette Washington, Hazel Williams. Zelma Lang, Renita Brown, Lillie Thompson, Mary Dews.

Michael P. Lynn, Eric W. Pinker, Lynn Tillotson & Pinker, Dallas, TX, M. Brett Johnson, Thomas M. Melsheimer, Fish & Richardson, Dallas, TX, for Highlands of McKamy IV and V Community Improvement Ass'n, Preston Highlands Homeowners' Ass'n, Inc., David Beer, Ginger Lee.

Joseph G. Werner, Haynes & Boone, Dallas, TX, Jeffrey A. Carter, Mike McKool, Jr., McKool Smith, Dallas, TX, Melissa A. Miles, Haynes & Boone, Dallas, TX, for Housing Authority of City of Dallas.

Charles Estee, Dallas City Attorney's Office, Dallas, TX, for City of Dallas.

J. Daniel McElroy, Johnson & McElroy, Dallas, TX, for Cornerstone Housing Corp.

Neil H. Koslowe, U.S. Dept. of Justice, Civil Div. Fed. Programs Branch, Washington, DC, for Thomas H. Peebles.

### MEMORANDUM ORDER

BUCHMEYER, Senior District Judge.

Before this Court are two related motions by Plaintiffs: **Plaintiffs' Motion to Enjoin DHA to Provide Public Facility Financing in Suburban Areas** (filed September 5, 2002) and **Plaintiffs' Motion to Add T. Lynn Stuck in Official Capacity as a Party Defendant and to Enjoin Stuck from Disapproving DHA's Public Facility Bonds** (filed November 4, 2003). This Court held a hearing on Plaintiffs' Motion to Enjoin DHA on October 2, 2003. For the reasons enumerated below, that motion is hereby **GRANTED**. Plaintiffs' Motion to Add T. Lynn Stuck and Enjoin her is hereby **DENIED**.

### I. BACKGROUND

In an ongoing effort to remove the prior vestiges of racial segregation in Dallas housing, Plaintiffs request relief that extends to residential developments located in census tracts eligible for HUD Settlement voucher placements as outlined in this case's Settlement Stipulation and Order of March 8, 2001. In its July 2003 report to the Court regarding barriers to implementing the Settlement plan, the Dallas Housing Authority ("DHA") identified two major reasons cited by families for their failure to locate housing: housing shortage (47%) and clients not meeting rent burden (12%). (Pl. Exh. 1 at 1.) In this motion, Plaintiffs speak specifically to DHA's assessment, which also announces class members' preference for housing in the southern Dallas metroplex.

Under the Settlement Stipulation and Order of March 8, 2001, Section 8 housing vouchers are to be awarded by DHA to class members who receive offers in units in "predominantly white areas." The agreement and order defines a "predominantly white area" as "a census tract that, according to the most recent decennial census, (i) has a black population at or below the average black population of the City of Dallas, (ii) has no public housing, and (iii) has a poverty rate at or below the average for the City of Dallas; or a census tract that the plaintiffs and DHA agree should be treated as a predominantly white area."

DHA disagrees with a number of facts recited by the Plaintiffs, including the housing segregation trends revealed by census data at different levels. Plaintiffs contend that DHA's data, which reports at the census-tract level, overstates the extent of desegregation. Plaintiffs offer the alternative methodology of reporting on the Settlement class members according to more neighborhood-like census tract block groups. Plaintiffs offer evidence that class members are becoming increasingly concentrated within the cities of Dallas, Irving, Garland, and Mesquite. At the same time, White and Latina/o Section 8 families are becoming less concentrated in Dallas, Irving, Garland, and Mesquite. DHA offers nothing to contradict Plaintiffs' findings.

DHA currently provides public facility financial assistance for housing development located within the City of Dallas ("Dallas" or "City"). Plaintiffs urge that DHA "set up a public facility corporation that can provide multifamily developers with lower interest rate loans and low-income tax credits." (Motion at 1.) Under this financing scheme, DHA may condition developers' funding incentives on the institution of programs that eliminate the barriers currently preventing class members from using the vouchers in predominantly white areas accessing housing as described

in the Settlement. Developers will receive financial benefits for increasing the supply of available Section 8 units.

Plaintiffs seek to enjoin DHA from continuing its current practice of providing public facility financial assistance only for housing located within Dallas. They ask that DHA use its authority to create public facility corporations to geographically expand its financial assistance to areas outside DHA's current area of operation. DHA contends that they are restricted by state and federal law from developing housing outside Dallas, their statutory "area of operation." The restriction of public facility corporation financing to the City hinders the use of Section 8 vouchers by class members due to limited housing development in predominantly white areas. Public facility financial assistance, Plaintiffs contend, will reduce the barriers to class members of obtaining voucher settlement housing in non-black, non-poverty areas. DHA disagrees with Plaintiffs over whether DHA's use of public facility financing corporations will necessarily prevent the resegregation of class members and whether the use of public facility corporation financing will ensure the availability of units for class members.

DHA does not oppose the establishment of public facility corporations outside their statutory area of operation, but they do not believe that they are legally authorized to finance privately owned housing outside DHA's area of operation. To confirm their understanding of state law, and without notice to Plaintiffs, DHA contacted the Texas Attorney General by letter on September 30, 2003. T. Lynn Stuck, Assistant Attorney General and Chief of the Public Finance Division, replied on October 1, 2003. The reply reiterates DHA's position that the Attorney General is aware of no authority: (1) that would allow DHA to finance property outside its area of operation, and (2) that would allow a public finance corporation created by DHA to finance property outside its area of operation. (DHA Exh 1.) While not a formal opinion, the letter "represents only the position that would be applied by the Public Finance Division in the course of its review of bonds issued by a public facility corporation created by DHA." *Id.* In other words, the Attorney General has indicated a likelihood of bond disapproval in the event that DHA creates a public facility corporation and attempts to issue bonds to assist in the financing of housing outside DHA's area of operation. On this basis, Plaintiffs seek to add T. Lynn Stuck as a Defendant and move to enjoin her from disapproving DHA's public facility bonds.

## II. ANALYSIS

### A. Financing Residential Development under the Texas Local Government Code

In seeking to enjoin DHA to provide public facility corporation financing to residential development outside the City limits, Plaintiffs make three arguments. First, Plaintiffs contend that because Texas Local Government Code (the "Code") does not specifically and affirmatively restrict "residential development" outside a housing authority's area of operation, DHA should offer such financing to developers and owners of residential developments outside the City. Second, Plaintiffs argue that if Defendants' interpretation is correct, and Texas law restricts public facility corporation financing to the City, then the Fair Housing Act should preempt state law because the Code permits actions that constitute discriminatory housing practices. Last, Plaintiffs reason that DHA's failure to offer public facility corporation financing to developers outside Dallas constitutes a violation of DHA's Four-

teenth Amendment duty to remedy the segregative effects of their prior policies.

Texas state law provides that a municipal housing authority may not undertake a housing project outside its area of operation unless the municipality in which it wishes to locate a housing project adopts a resolution authorizing the housing authority to act within that political subdivision. Tex. Loc. Gov't Code Ann. § 392.017(b) (Vernon 1999). Chapter 392 of the Code (the "Housing Authorities Law") governs housing authorities and speaks to the need for the construction and reconstruction of safe and sanitary housing. *See generally id.* at § 392.003 (listing legislative findings describing the shortage of safe and sanitary affordable housing, the need for construction of housing projects, and stating that "it is in the public interest that work on low income housing projects commence as soon as possible."). The Housing Authorities Law affords counties and municipalities the power to establish housing authorities, and it outlines their powers, duties, and obligations, including their authority to issue bonds. The chapter defines "housing project" in part as an undertaking to clean up a slum area or to "provide decent, safe, and sanitary urban or rural housing for persons of low income, including buildings, land, equipment, facilities, and other real or personal property ..." *Id.* at § 392.002(6). A municipal housing authority is restricted to its "area of operation," which consists of the municipality and the area within five miles of its boundary not governed by another municipality. *Id.* at § 392.014. A housing authority may overcome the area-of-operation restriction through agreements with other political subdivisions.[1] *Id.* at §§ 392.017 & 392.056.

Section 392.066 links the establishment of a public facility corporation by a housing authority to Chapter 303, the Public Facility Corporation Act. It endows a public facility corporation created by a housing authority with the power to "acquire, construct, ... or provide assistance to a residential development described by Section 394.004 *or* a housing project." Tex. Loc. Gov't Code Ann. § 392.066(a)(1) (Vernon Supp.2004). Section 394.004 applies Chapter 394 to residential development when at least 90% of the residential development serves low or moderate income persons. Tex. Loc. Gov't Code Ann. § 394.004 (Vernon 1999). Chapter 394 (the "Texas Housing Finance Corporation Act") is intended to "provide a means to finance the cost of residential ownership and development." *Id.* at § 394.002(a). It defines residential development as "for the purpose of providing decent, safe, and sanitary housing and nonhousing facilities that are an integral part of or functionally related to any affordable housing project, whether in one or multiple locations."[2]

---

1. At the October 2, 2003, hearing, DHA General Counsel Elizabeth Horn, was unable to answer whether DHA has pursued cooperative agreements with other political subdivisions as provided under § 392.059. She was unaware of any such movement by DHA.

2. Tex. Loc. Gov't Code Ann. § 394.003(13) (Vernon 2004).
   "Residential development" means the acquisition, construction, reconstruction, rehabilitation, repair, alteration, improvement, or extension of any of the following items or any combination of the following items for the purpose of providing decent, safe, and sanitary housing and nonhousing facilities that are an integral part of or are functionally related to any affordable housing project, whether in one or multiple locations, including any facilities used for the purpose of delivering tenant services, as defined by Section 23.6.254, Government Code:
   (A) land, an interest in land, a building or other structure, facility, system, fixture, improvement, addition, appurtenance, or machinery or other equipment;

[redacted] In sum, a housing authority may create a public facility corporation, and that public facility corporation may provide financial assistance to residential developments or housing projects. Texas law specifically restricts a housing authority's power to operate, construct, and lease a "housing project" to its area of operation, but it does not specifically disallow "residential development" outside its area of operation. Residential developments are legally distinct from housing projects, but they must be functionally related or an integral part of an affordable housing project. However, § 394.903(a), which applies to residential development by public facility corporations via § 394.004, restricts residential development to locations within the local government.[3] "Local government" refers to any municipality or county, and in the context of a public facility corporation created by a housing authority, the housing authority's jurisdiction serves as an appropriate proxy for the limitation.[4]

Plaintiffs argue that because state law imposes no geographic restrictions on "residential development," DHA should provide public facility financing assistance for residential development outside its area of operation. Plaintiffs have not argued that proposed residential development outside Dallas is functionally related to an affordable housing project undertaken by DHA within its area of operation. As Plaintiffs' interpretation of the Code requires this unlikely statutory interpretation, Plaintiffs' motion is not granted on this basis.

However, despite its authority to do so under § 392.017, DHA has not attempted to contract with other housing authorities. As made apparent in testimony by DHA's General Counsel, DHA has failed to pursue a cooperative agreement with any other housing authority or city that would facilitate the provision of incentives to private developers to expand the availability of Section 8 housing. As such, this Court now examines public facility financing as a remedial measure.

### B. Fourteenth Amendment Duty to Remedy Effects of Past Segregation

Plaintiffs argue that DHA's refusal to use public facility financial assistance in developments outside the City violates its Fourteenth Amendment duty to remedy the segregative effects of its prior segregation policies. DHA denies this claim. This court follows the analysis in *Hills v. Gautreaux,* 425 U.S. 284, 96 S.Ct. 1538, 47 L.Ed.2d 792 (1976), and the guidance provided by the Fifth Circuit in *Walker v. City of Mesquite,* 169 F.3d 973 (1999), in determining whether the use of tax-exempt bond financing in areas outside DHA's area of operation provides an allowable remedy for past constitutional violations.

The Supreme Court announced a criterion for the review of interdistrict remedies in *Milliken v. Bradley,* 418 U.S. 717, 94

(B) real or personal property considered necessary in connection with an item described in Paragraph (A); or
(C) real or personal property or improvements functionally related and subordinate to an item described by Paragraph (A).
*Id.*

3. The Code further provides that a local government may, with few encumbrances, transfer a residential development site to a housing finance corporation. *See* Tex. Loc. Gov't Code Ann. § 394.903(b) (Vernon 1999).

4. The stated purpose of Chapter 394 is to "promote a means to finance the cost of residential ownership and development that will provide decent, safe, and sanitary housing at affordable prices for residents of local governments." *See id.* at § 394.002(a).

S.Ct. 3112, 41 L.Ed.2d 1069 (1974). It held that "[a] district court seeking to remedy an *intra* district violation that has not 'directly caused' significant interdistrict effects exceeds its remedial authority if it enters a remedy with an interdistrict purpose." *Id.* at 744–45, 94 S.Ct. 3112. The Court invalidated a remedial order requiring the consolidation of school districts following a finding of *de jure* school segregation violations. *Id.* at 742–43, 94 S.Ct. 3112. Two years later in *Hills v. Gautreaux,* the Supreme Court determined that the *Milliken* restriction on multidistrict remedies did not apply to the *Hills* housing segregation situation and that ordering a housing-market-area remedy comported with its ruling in *Milliken. Hills,* 425 U.S. at 299, 96 S.Ct. 1538.

In *Hills,* the Supreme Court addressed the issue of whether a trial court's remedy for a constitutional violation could extend beyond a city's territorial borders. *Id.* at 286, 96 S.Ct. 1538. The trial court had found both the Chicago housing authority and the U.S. Department of Housing and Urban Development ("HUD") guilty of racial discrimination in public housing. In fashioning an appropriate remedy, the Court first looked to the geographical limitations of the agencies involved. The Chicago Housing Authority and HUD had "the authority to operate outside the Chicago city limits." 425 U.S. at 298, 96 S.Ct. 1538. Specifically, the Illinois statutes defined an "area of operation" as the municipal boundary plus area three miles outside the city that is not within the boundaries of another city, village, or town. *See Hills,* 425 U.S. at 298 n. 14, 96 S.Ct. 1538. Illinois law also provided for the possibility of cooperative agreements with other housing authorities or cities. *See id.* The Court ultimately named the Chicago metropolitan housing market as the relevant geographic area for a remedy in *Hills* and decided that a metropolitan-area remedial order would neither consolidate nor restructure local governmental units. *See id.* at 299 & 305–06, 96 S.Ct. 1538.

The motion at bar addresses an issue similar to that in *Hills:* Plaintiffs request that this Court enjoin DHA to provide public facility financing in suburban areas outside DHA's statutory area of operation. "Once a right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies." *Hills,* 425 U.S. at 297, 96 S.Ct. 1538 (quoting *Swann v. Charlotte–Mecklenberg Bd. of Educ.,* 402 U.S. 1, 15, 91 S.Ct. 1267, 28 L.Ed.2d 554 (1971)). A constitutional violation serves as the foundation for the relief requested in this motion, so this Court must consider whether the geographically extended use of tax-exempt bond financing, as a remedy, suits the "nature and extent of the constitutional violation." *Milliken,* 418 U.S. at 738, 94 S.Ct. 3112.

The relevant Texas statutes, sections 392.014 and 392.017 of the Housing Authorities Law, replicate nearly verbatim the Illinois statutes at issue in *Hills.* Both states define an "area of operation" as a municipality plus the area within a specified number of miles outside the city's borders not contained in another town. The Illinois statute allows three miles outside the city, and the Texas statute provides for a more generous five-mile area. *See* Tex. Loc. Gov't Code Ann. § 392.014. In addition, both states allow municipal housing authorities to contract with other housing authorities. The Supreme Court in *Hills* interpreted these statutes as granting the Chicago Housing Authority "the authority to operate outside the Chicago city limits." *Hills,* 425 U.S. at 298, 96 S.Ct. 1538. Texas similarly grants DHA the authority to operate outside the Dallas city limits.

Plaintiffs' ask that DHA be required to provide public facility financing in suburban areas within the Dallas area housing market. While DHA might have sought to employ this measure through cooperative agreements, it did not. Requiring DHA to provide public facility financing would neither restructure nor consolidate suburban governments. Rather, it causes DHA to enter agreements that it had and has the discretionary authority to pursue.

In addition to the Supreme Court's applicable analysis, the Fifth Circuit has expressed its preference for Section 8 as a race-neutral remedy that "allows market forces and personal preferences rather than racial criteria to guide the homemaking decision." *Walker v. City of Mesquite*, 169 F.3d 973, 984 (5th Cir.1999) Class members have expressed a preference for suburban housing in which housing is unavailable. To ensure the success of the Section 8 remedy, the circuit court advocated the promotion of "helping-hands." *Id.* at 984. The court's examples of helping hands included the provision of financial incentives for potential Section 8 landlords. Public facility bond financing provides landlords another such incentive while increasing the availability of available units for class members and discouraging the concentration of classmembers in particular geographic areas.

Plaintiffs' Motion to Enjoin DHA to Provide Public Facility Financing in Suburban Areas is hereby **GRANTED**.

## C. Preemption of the Local Government Code under the Fair Housing Act

Plaintiffs argue that if DHA's interpretation of the Dallas-only limitation carries, then the statute should be held invalid as preempted under the Fair Housing Act ("FHA"). Specifically, Plaintiffs claim that if Texas law imposes an area-of-operations requirement to the provision of financial assistance for suburban residential development, then it constitutes a discriminatory housing practice and therefore is preempted by the FHA. The FHA invalidates any state law that purports to require or permit any action that constitutes a discriminatory housing practice. 42 U.S.C. § 3615 (2003). Plaintiffs cite §§ 3604(a) and 3605(a) of the FHA as provisions violated by Texas' area-of-operation restriction. Section 3604(a) prohibits discrimination in the sale or rental of housing; section 3605(a) prohibits discrimination in residential real estate-related transactions. Plaintiffs contend that under DHA's reading of the area-of-operation restriction, the statute is preempted. As this Court has decided the motion on other grounds, it need not address Fair Housing Act preemption.

## D. Plaintiff's Motion to Add and Enjoin T. Lynn Stuck in her Official Capacity

After learning on October 2, 2003, that DHA consulted with the Texas Attorney General to confirm its understanding of Texas housing and finance laws, Plaintiffs moved to add and enjoin the Attorney General from denying DHA's application for bond issuance by a public facility corporation in a suburban area. This district court has broad discretion in determining the propriety of joining or continuing a particular party as a defendant. *Williams v. Hoyt*, 556 F.2d 1336, 1341 (5th Cir.1977). Plaintiffs' motion is hereby **DENIED**.

## III. CONCLUSION

It seems unlikely the area-of-operation limitation applies to housing projects but not to residential development because the two-by definition-are related, and residential development is dependant on the exis-

tence of a housing project. However, the provision of public facility financing in suburban areas provides an appropriate remedial measure in the ongoing effort to remove the segregative effects of its prior policies.

Plaintiffs' Motion to Enjoin DHA to Provide Public Facility Financing in Suburban Areas is hereby **GRANTED**. Plaintiffs' Motion to Add T. Lynn Stuck in her Official Capacity and Enjoin her from Disapproving Bonds is **DENIED**.

**IT IS SO ORDERED.**